1   Jason Chong, Bar No. 268804
    LAW OFFICES OF JASON J. CHONG
2   2400 E. Katella Ave. Suite 800
    Anaheim, California 92806
3   (714) 725-2626
    (714) 798-6969 (facsimile)
4   Jason@ChongLegal.com

5   Attorneys for Plaintiff,
    Maria De Lourdes Jimenez

6

7

8                   **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10                       **WESTERN DIVISION**

11

12  MARIA DE LOURDES JIMENEZ,          )   **CASE NO.:**
    individually and as the Successor-in-Interest to  )
13  THE ESTATE OF JOSE ANTONIO         )   **COMPLAINT FOR WRONGFUL**
    JIMENEZ,                           )   **DEATH AND SURVIVAL ACTION**
14                                     )   **DAMAGES:**
                     Plaintiff,        )
15                                     )
    vs.                                )   **1.   PROFESSIONAL NEGLIGENCE**
16                                     )        **(MEDICAL MALPRACTICE)**
                                       )
17  UNITED STATES OF AMERICA; and DOES )   **2.   NEGLIGENT HIRING AND**
    1 through 100, inclusive,          )        **RETENTION**
18                                     )
                                       )
19                   Defendants.       )
                                       )   **DEMAND FOR JURY TRIAL**
20  _____ )

21

22

23

24                   **COMPLAINT FOR DAMAGES**

25  Plaintiff, MARIA DE LOURDES JIMENEZ individually and as the Successor-in-Interest to THE

26  ESTATE OF JOSE ANTONIO JIMENEZ for causes of action against Defendant UNITED

27  STATES OF AMERICA and DOES 1 through 100, inclusive, hereby complains, avers, and

28  alleges as follows:

COMPLAINT FOR DAMAGES                    1

**INTRODUCTION**

Jose Antonio Jimenez ("Decedent") passed away in his family residence on May 01, 2018 of an apparent pulmonary embolism.  On July 24, 2019, Plaintiff filed suit against ARROYO VISTA HEALTH FOUNDATION and THUY Q. PHAM, M.D. in the Superior Court of the State of California for the County of Los Angeles.  On March 27, 2020, the Assistant U.S. Attorney Chief, Civil Division, David M. Harris, certified that ARROYO VISTA HEALTH FOUNDATION and THUY Q. PHAM, M.D. were acting within the scope of their employment as deemed employees of the Pubic Health Service of the United States.  On April 15, 2020, the United States Attorney's office filed a Notice of Removal of Civil Action to United States District Court.  The case was dismissed on April 22, 2020.

**PARTIES**

1.     Plaintiff MARIA DE LOURDES JIMENEZ ("Plaintiff") is, and at all relevant times herein alleged, a natural person, residing in the City of Los Angeles, County of Los Angeles, State of California, and is the surviving spouse of Decedent.

2.     The  ESTATE OF JOSE ANTONIO JIMENEZ, represented by and through its Successor-in-Interest MARIA DE LOURDES JIMENEZ, brings this action under the Federal Tort Claims Act, 28 U.S.C.§ 1346(b) and 51 U.S.C. § 20137.

3.     ARROYO VISTA HEALTH FOUNDATION ("ARROYO VISTA") is a public or nonprofit entity receiving Federal funds under § 254b, § 254c, § 256 and/or § 256a of the Public Health Services Act.

4.     THUY Q. PHAM, M.D. ("PHAM") is a licensed physician in the state of California, and an employee of ARROYO VISTA.

5.     Defendant UNTIED STATES OF AMERICA is the employer of ARROYO VISTA and PHAM pursuant to the Federally Supported Health Centers Assistance Act of 1992, 42 U.S.C. § 233(g).

6.     At all times mentioned herein, Defendants, and each of them, were the agents, representatives, employees, successors and/or assigns, each of the other, and were acting within

COMPLAINT FOR DAMAGES                                    2

the course and scope of their authority as such agents, representatives, employees, successors and/or assigns, and each defendant ratified and approved the acts of its, his or her agent, and/or that of the remaining defendants, and each of them.

7. By the doctrine of respondeat superior, Plaintiff alleges that the UNITED STATES and DOES 1 through 100 are responsible and liable to Plaintiff for the acts of ARROYO VISTA and PHAM as to each of the causes of action hereinafter alleged.

8. By the doctrine of ratification, Plaintiff alleges that the UNITED STATES and DOES 1 through 100 are responsible and liable to Plaintiff for the acts of ARROYO VISTA and PHAM as to each of the causes of action hereinafter alleged.

9. Defendants, and each of them, are jointly and severally liable for Plaintiff's damages as stated herein.

**JURISDICTION AND VENUE**

10. On April 21, 2020, the United States Department of Heath & Human Services ("HHS") was served with an administrative tort claim pursuant to the Federal Tort Claims Act 28 U.S.C. § 2675(a). Plaintiff, received a written response on May 19, 2020 from HHS. On May 29, 2020, Plaintiff, through counsel, responded to HHS's written correspondence via email to Connie M. McConahy of HHS. On June 03, 2020, Connie M. McConahy responded to Plaintiff's counsel's email inquiring whether Plaintiff submitted everything for the claim. Plaintiff responded to the email by indicating that it was all she had in her possession. No further communication was received from HHS. HHS has not adjudicated Plaintiff's administrative claims for damages within six-months of receiving the claim, thereby denying Plaintiff's claim by operation of law.

11. Venue is proper pursuant to 28 U.S.C. § 1402 because at all times relevant, the Plaintiff resided in this district and all of the wrongful acts and/or omissions complained of herein occurred in this judicial district.

//

//

//

**STATEMENT OF THE RELEVANT FACTS**

12.     On  the morning of May 01, 2018, sixty-five-year-old JOSE ANTONIO

JIMENEZ ("Decedent"), suddenly collapsed at his home.  His wife was present and immediately

called 911.  When the paramedics arrived on scene, Decedent had already passed.

13.     The cause of death is believed to likely be the result of a Pulmonary Embolism.

14.     Pulmonary Embolism is a blockage in one of the pulmonary arteries in your lungs.

Prompt treatment greatly reduces the risk of death.  Common signs and symptoms include

shortness of breath, chest pain, dizziness, and cough.  PHAM failed to run the proper tests to

diagnosis Decedent,  including but not limited to drawing specific blood tests for clot-dissolving

substance D dimer, a duplex ultrasonography, a spiral CT scan, an MRI, or a pulmonary

angiogram.

15.     A proper diagnosis by PHAM would have given Decedent the opportunity to treat

the condition including taking blood thinners, clot dissolvers, or even surgery to remove a specific

clot or a vein filter.  None of these options were available for Decedent because of PHAM's failure

to properly diagnosis Decedent, ultimately resulting in his death.

16.     Prior to his death since 2012, Decedent's primary hospital was ARROYO VISTA

where he made regular visits for routine medical examinations.

17.     During one of Decedent's medical examination at ARROYO VISTA on or about

April 2015, Dr. Cheryl Chu M.D.  diagnosed Decedent with having a Murmur, Cardiac, Elevated

PSA, and Lipidemia.  During this examination, Dr. Chu M.D. ordered various tests to be done

including comprehensive Metabolic Panel, Lipid Panel, TSH, Prostatic Specific Ag, Urinalysis

w/Microscopic-Automated (UA AUTO), CBC w/ differential.

18.     The results of those tests revealed that Decedent's Triglycerides were "Very

High", his Cardiac Risk Factor was "Borderline High", and his LDL (Calc) and VLDL (Calc) were

"Very High".

19.     On or about April 27, 2017 Decedent sought medical treatment at ARROYO

VISTA for an earache.  The doctor simply prescribed ear drops and ordered tests.

20.     On or about December 10, 2017, while Decedent was traveling in the country of Mexico, he became extremely dizzy and abnormally tired, so he was admitted into a Hospital in Mexico.  After examination, the physician in Mexico showed Decedent his EKG results that they had just done and informed him that his heart-rate was low, and advised Decedent to get it checked out by his primary care physician once he returned home to the States.

21.     Two days later on December 12, 2017, Decedent met with PHAM and provided him with the EKG results that Decedent obtained in Mexico.  Plaintiff and Decedent pleaded with PHAM for a referral to see a Cardiologist and an MRI.  However, PHAM ignored these requests.

22.     On December 15, 2017, just three days after his check-up with PHAM, Decedent was experiencing extreme dizzy spells and shortness of breath so he checked himself into ARROYO VISTA's Emergency Room.  During this visit, the treating physician at ARROYO VISTA's Emergency Room diagnosed Decedent with Vertigo and Anemia.  ARROYO VISTA ran more tests, including a scan, CXR, and another EKG.  Decedent was then released from the emergency room with a recommendation to follow up with his primary care physician PHAM.

23.     On January 15, 2018, a month after the emergency room visit, Decedent finally met with PHAM for a follow-up consultation.  Decedent again stated to PHAM that he was experiencing extreme dizziness, loss of appetite, and was losing weight at an alarming rate.  During this critical visit, rather than order an MRI or refer Decedent to a Cardiologist, PHAM negligently ordered Decedent to undergo a Colonoscopy "to rule out malignancy", despite Decedent, Plaintiff, and Decedent's daughters repeated requests for an MRI and a Cardiologist.  PHAM incorrectly diagnosed Decedent with  "benign vertigo", fatigue, weight loss, and abnormal LFT. and discharged Decedent

24.     On January 24, 2018, Decedent met with PHAM again for a visit and to receive the results of his latest lab work.  During this examination, PHAM diagnosed Decedent with Type 2 diabetes.  PHAM simply recommended a prescription of the medication Metformin and then scheduled a GI referral and to follow up in three months.

25.     A short time later on February 07, 2018, Decedent checked into ARROYO VISTA again complaining of continuing dizzy spells, loss of appetite, and jaundice.  At this time,

1   Plaintiff knew something was wrong and desperately pleaded with PHAM for Decedent to be

2   referred for an MRI.   This request was again ignored by ARROYO VISTA AND PHAM.

3          26.     Rather than focusing on cardiac-related testing, PHAM turned his

4   attention to the labwork results regarding Decedent's liver.   PHAM simply ordered a refill of

5   Decedent's prescription medicine to treat his dizziness and issued a referral for Decedent to see a

6   Urologist.

7          27.     On February 10, 2018, Decedent finally received a referral order to see a

8   Cardiologist.  However, PHAM still refused to order an MRI, despite continued requests from

9   Decedent and Plaintiff.   Instead, PHAM chose to conduct an Abdominal and Renal ultrasound,

10  which came back as unremarkable and no perirenal abnormality seen.  On February 26, 2018,

11  Decedent underwent the Colonoscopy that PHAM ordered.  All of these treatments were

12  unnecessary and not relevant in diagnosing Decedent with Pulmonary Embolism.

13         28.     Over a month later on March 29, 2018, PHAM finally met with Decedent for a

14  follow-up visit to discuss the Colonoscopy and Ultrasound results.  Decedent again complained of

15  headache, dizziness, extreme fatigue, and loss of weight.   This time, PHAM recommended

16  Decedent see an Optometry and Podiatry, and gave Decedent referrals for cardiology, hematology

17  and an EKG.

18         29.     About four days later on or about April 03, 2018, Decedent's condition was

19  drastically worsening, and Decedent and Plaintiff desperately wanted something more to be done

20  by ARROYO VISTA and PHAM.   In addition to the repeated complaints of dizziness, fatigue,

21  and weight loss, Decedent told PHAM that he had developed a dry- cough that was very

22  concerning to him.  Decedent and Plaintiff again demanded an immediate referral for an MRI.

23  PHAM refused and wanted to follow-up on Decedent's blood test results for possible diagnosis of

24  diabetes.

25         30.     No subsequent treatment was provided by ARROYO VISTA or PHAM until

26  Decedent's death less than a month later on May 01, 2018.

27         31.     The complaint has been filed within the time period allowed by law for Plaintiff's

28  discovery of the negligence of the Defendants and each of them, and DOES 1 through 100.

**FIRST CAUSE OF ACTION**

**(PROFESSIONAL NEGLIGENCE - PLAINTIFF AGAINST ALL DEFENDANTS)**

32.     Plaintiff hereby realleges and incorporates paragraphs 1 through 31 as though set forth in full herein.

33.     Decedent was a patient of ARROYO VISTA and PHAM where he was receiving ongoing medical treatment.  The UNITED STATES was the employer of ARROYO VISTA and PHAM during all relevant times.

34.     At the time Decedent  sought the professional services of Defendants, Defendants, and each of them, held themselves out to the general public as competent and skilled physicians licensed by the Medical Board of California.  Plaintiff relied upon said representations of skill and competency when retaining said Defendants to treat Decedent's illness.

35.     PHAM negligently failed to exercise the proper degree of knowledge, skill and fell below the applicable standard of care by treating Decedent negligently by failing to run the proper tests for a proper diagnosis of Pulmonary Embolism.

36.     The aforementioned misdiagnosis and mistreatment by PHAM giving rise to this wrongful death and survival action proximately and legally caused Decedent to suffer fatal injuries.

37.     Plaintiff is further informed and believe, and thereon allege, that the UNITED STATES, ARROYO VISTA, PHAM, and DOES 1 through 100, inclusive, were the agents, representatives, employees, successors and/or assigns, each of the other, and were acting within the course and scope of their authority as such agents, representatives, employees, successors and/or assigns, and each defendant ratified and approved the acts of its, his or her agent, and/or that of the remaining defendants, and each of them.

38.     As a legal, direct and proximate result of the reckless and negligent conduct of Defendants, and each of them, Plaintiff has sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits an assistance of Decedent, all to Plaintiff's general damages in a sum in excess of the jurisdictional limits of this

1  Court, which will be stated according to proof.

2     39.     As a legal, direct and proximate result of the reckless and negligent conduct of

3  Defendants, and each of them, Plaintiff will be deprived of the financial support and assistance of

4  Decedent, the exact amount of such losses to be stated according to proof..

5     40.     As a legal, direct and proximate result of the reckless and negligent conduct of

6  Defendants, and each of them, Plaintiff have incurred property, medical, funeral and burial

7  expenses in an amount to be stated to proof.

8     41.     As a legal, direct and proximate result of the reckless and negligent conduct of

9  Defendants, and each of them, Decedent suffered lost earnings, the exact amount of such losses to

10  be stated to proof.

11     42.     Because the acts of the UNITED STATES, ARROYO VISTA, PHAM, and

12  DOES 1 through 100, inclusive, were either committed in a deliberate, cold, callous, malicious,

13  intentional and/or unreasonable manner, as fully set forth above, causing fatal injuries to Decedent,

14  and done with a conscious disregard of Decedent's rights and safety, Plaintiff THE ESTATE OF

15  JOSE ANTONIO JIMENEZ, represented by and through its Successor-in-Interest to Plaintiff

16  LOURDES JIMENEZ, requests the assessment of punitive damages against Defendants and each

17  of them in an amount appropriate to punish or set an example of them.

18

19                    **SECOND CAUSE OF ACTION**

20  **(NEGLIGENT HIRING AND RETENTION- PLAINTIFF AGAINST ALL DEFENDANTS)**

21     43.     Plaintiff hereby  realleges and incorporates paragraphs 1 through 42 as though set

22  forth in full herein.

23     44.     Plaintiff alleges that ARROYO VISTA owed to Decedent a duty to employ only

24  competent and skilled professionals at its medical facility to ensure his safety and to prevent the

25  type of mistreatment that Decedent experienced at that facility.  Plaintiff further alleges that

26  PHAM lacked basic diagnostic skills and competency and that ARROYO VISTA either knew or

27  should have known as part of its peer review procedures that PHAM presented a risk to those

28  patients on whom he may examine and treat with such a lack of skill care and competence.

45.    Plaintiff also alleges that the UNITED STATES is liable for the actions of ARROYO VISTA as the employer of PHAM, and is liable to her for hiring PHAM in the first instance based on the apparent lack of skill and training, and/or in retaining PHAM as a staff physician based on the same concerns.

46.    As a legal, direct and proximate result of the reckless and negligent conduct of the UNITED STATES, ARROYO VISTA, PHAM, and DOES 1 through 100, inclusive, and each of them, Plaintiff has sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits an assistance of Decedent, all to Plaintiff's general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof.

47.    As a legal, direct and proximate result of the reckless and negligent conduct of Defendants, and each of them, Plaintiff will be deprived of the financial support and assistance of Decedent, the exact amount of such losses to be stated according to proof.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

AS TO ALL CAUSES OF ACTIONS

1. For general and special damages, including but not limited to, loss of love, affection, care, society, service, comfort, support, right to support, companionship, solace or moral support, expectations of further support and counseling, other benefits and assistance, according to proof.

2. For economic damages suffered by Plaintiff, related to loss of earning and loss of financial support from Decedent, according to proof.

3. For hospital, medical, professional and incidental expenses suffered by Plaintiff according to proof.

4. For all costs of suit, including expert costs.

5. For prejudgment interest, according to proof.

6. For any and all relief as the court deems just and proper.

COMPLAINT FOR DAMAGES                    9

1

DATED:   October 22, 2020                LAW OFFICES OF JASON J. CHONG

2

3                                        By: /s/ Jason J. Chong
                                             JASON CHONG
4                                            Attorney for Plaintiff
                                             MARIA DE LOURDES JIMENEZ
5

6

7

8

9

10                           **DEMAND FOR JURY TRIAL**

11

          Plaintiff MARIA DE LOURDES JIMENEZ hereby demand a trial by jury on all claims.
12

13   DATED:   October 22, 2020                LAW OFFICES OF JASON J. CHONG

14                                       By: /s/ Jason J. Chong
                                             JASON CHONG
15                                           Attorney for Plaintiff
                                             MARIA DE LOURDES JIMENEZ
16

17

18

19

20

21

22

23

24

25

26

27

28